JUN 5 2024 PM3:41
FILED - USDC - FLMD - TPA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.   Case No. 8:22-cr-330-TPB-UAM

MANUEL DOMINGOS PITA

18 U.S.C. § 371
29 U.S.C. § 666(e)

### SUPERSEDING INFORMATION

The United States Attorney and the Assistant Attorney General of the United States Department of Justice's Environment and Natural Resources Division (collectively "the United States") charge:

### COUNT ONE
### (Wire Fraud Conspiracy)

**A.   Introduction**

At times material to this Superseding Information:

1.   Domingos 54 Construction, Inc. ("Domingos 54 Construction") was a corporation registered with the Florida Department of State. Domingos 54 Construction was created in or about May 2018, and its principal place of business was at an address in Hillsborough County, in the Middle District of Florida. Defendant MANUEL DOMINGOS PITA was the only director of Domingos 54 Construction at its creation and was the company's President.

2.   Defendant MANUEL DOMINGOS PITA managed and directed the operations of Domingos 54 Construction.

1

3. Under Florida law, any contractor or subcontractor who engaged in any public or private construction was required to secure and maintain valid coverage under state law for worker's compensation insurance. A contractor was required to obtain evidence from its subcontractors that the subcontractors had worker's compensation insurance coverage for their workers. Failure to maintain worker's compensation insurance was a felony offense under Florida law.

4. Providers of worker's compensation insurance based the premiums they charged and the amount of coverage they provided on the number of employees a company had and the total annual payroll of those employees.

5. Businesses frequently provided proof of worker's compensation insurance coverage in the form of a Certificate of Liability Insurance, a document declaring that the subcontractor had the requisite insurance coverage. This certificate of insurance ("COI") stated only that the business had worker's compensation insurance and did not include the number of workers or the amount of payroll that the insurance policy covered.

6. Domingos 54 Construction had agreements with contractors and subcontractors (hereinafter, collectively, "contractors") to use workers purported to be "Domingos 54 Construction employees" at construction sites, and these workers were often undocumented aliens who were actually working for and under the daily supervision and direction of the contractors and others.

7. Domingos 54 Construction received purported "payroll checks" from contractors and withdrew cash at various financial institutions to pay "Domingos 54 Construction employees" and other related expenses.

### B. The Conspiracy

8. From in or about May 2018, through in or about March 2022, in the Middle District of Florida and elsewhere, the defendant,

MANUEL DOMINGOS PITA,

did knowingly and voluntarily, combine, conspire, confederate, and agree with other persons, known and unknown to the United States, to commit wire fraud, in violation of 18 U.S.C. § 1343.

### C. Manner and Means

9. The manner and means by which the conspirators carried out the object of the conspiracy included, among others, the following:

(a) It was a part of the conspiracy that defendant MANUEL DOMINGOS PITA, through Domingos 54 Construction, would and did facilitate the employment in the construction industry of undocumented aliens working illegally in the United States by purporting to employ such workers as its employees at various construction jobsites.

(b) It was further a part of the conspiracy that defendant MANUEL DOMINGOS PITA and others would and did provide, and cause to be provided, false and fraudulent information about, among other topics, the number of

Domingos 54 Construction's employees and how much money they were paid, to worker's compensation insurance carriers in order to secure COIs.

(c) It was further a part of the conspiracy that defendant MANUEL DOMINGOS PITA and others would and did cause construction contractors to enter into agreements with Domingos 54 Construction, during the course of which Domingos 54 Construction would agree to represent falsely and fraudulently that it did, in fact, employ said jobsite workers, when, in fact, such employees actually worked for and under the direction and supervision of the contractors and others.

(d) It was further a part of the conspiracy that defendant MANUEL DOMINGOS PITA and others would and did send, and cause to be sent, wire transmissions in interstate commerce to numerous contractors that contained COIs that falsely and fraudulently suggested that these purported "Domingos 54 Construction employees" had the requisite worker's compensation insurance coverage, when, in fact, they lacked the required insurance coverage.

(e) It was further a part of the conspiracy that defendant MANUEL DOMINGOS PITA and others would and did cause said contractors to provide checks to Domingos 54 Construction to pay for the contractors' jobsite workers' wages.

(f) It was further a part of the conspiracy that defendant MANUEL DOMINGOS PITA and others would and did deposit said contractors' checks into Domingos 54 Construction bank accounts, and would and did withdraw cash from said bank accounts in order to pay the contractors' jobsite workers, and the

defendant and other conspirators would and did retain a percentage of those payments as their fee.

(g) It was further a part of the conspiracy that defendant MANUEL DOMINGOS PITA and others, including contractors doing business with Domingos 54 Construction, would and did conceal the facts that: (1) construction jobsite workers were not legally authorized to work in the United States; (2) jobsite workers were not covered under worker's compensation insurance, as required; and (3) required state and federal payroll taxes were not being paid for these workers.

(h) It was further a part of the conspiracy that defendant MANUEL DOMINGOS PITA and others would and did make use of the proceeds of this scheme to defraud in order to perpetuate the scheme and to enrich themselves and members of their family.

(i) It was further a part of the conspiracy that defendant MANUEL DOMINGOS PITA and others would and did perform acts and make statements to misrepresent, hide, and conceal, and cause to be misrepresented, hidden, and concealed, the purposes of and the acts done in furtherance of said conspiracy.

### D. Overt Acts

In furtherance of the conspiracy and to accomplish the objects of the conspiracy, the conspirators committed, and caused to be committed, the following overt acts, within the Middle District of Florida, and elsewhere:

(a) On or about May 11, 2018, defendant MANUEL DOMINGOS PITA registered Domingos 54 Construction, and caused it to be registered, as a corporation with the Florida Department of State;

(b) On or about May 1, 2019, defendant MANUEL DOMINGOS PITA signed a Florida Workers Compensation Application for insurance coverage in which he applied for insurance coverage for Dominos 54 Construction for a one-year period covering a payroll of $120,000;

(c) On or around May 1, 2019, defendant MANUEL DOMINGOS PITA caused an individual to transmit by interstate wire communication to Mxxxxxxxx630@gmail.com a document entitled "Domingos 54 Work Comp Apps to Sign" which contained the defendant's signed and approved insurance application for the period from May 1, 2019 through May 1, 2020;

(d) Between on or about May 1, 2019 and on or about May 1, 2020, defendant MANUEL DOMINGOS PITA and others received and cashed more than $30 million in checks from construction contractors made payable to Domingos 54 Construction for use to pay jobsite construction workers;

(e) On or around May 5, 2021, defendant MANUEL DOMINGOS PITA caused an individual to transmit by interstate wire communication to Domingos54xxxxxxxxxxxxxxxx@gmail.com a document entitled "21/22 Workers Comp Policy and Claims Kit" which contained the defendant's statement that the worker's compensation insurance policy he was seeking for Domingos 54 Construction would cover a payroll of $160,000; and

(f) Between on or about May 1, 2021 and on or about March 30, 2022, defendant MANUEL DOMINGOS PITA and others received and cashed more than $54 million in checks from construction contractors made payable to Domingos 54 Construction for use to pay jobsite construction workers.

All in violation of 18 U.S.C. § 371.

## COUNT TWO
### (Conspiracy to Defraud United States)

#### A. Introduction

Part A of Count One of this Superseding Information is realleged and incorporated as though fully set forth herein.

#### B. Charge

From in or about May 2018, through in or about March 2022, in the Middle District of Florida, and elsewhere, the defendant,

MANUEL DOMINGOS PITA,

did knowingly and willfully combine, conspire, confederate, and agree with other persons, both known and unknown to the United States, to defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful government functions of the Internal Revenue Service ("IRS"), an agency of the United States Department of the Treasury, in the ascertainment, computation, assessment, and collection of federal payroll taxes, specifically Federal Insurance Contributions Act taxes (Social Security tax and Medicare tax) and federal income tax, by deceit, craft, and trickery.

### C. Manner and Means

Part C of Count One of this Superseding Information is realleged and incorporated as though fully set forth herein.

### D. Overt Acts

In furtherance of the conspiracy, and to effect the objects thereof, the following overt acts, among others, were committed in the Middle District of Florida, and elsewhere:

(a) On or about May 11, 2018, defendant MANUEL DOMINGOS PITA registered Domingos 54 Construction, and caused it to be registered, as a corporation with the Florida Department of State;

(b) Between on or about January 1, 2019 and on or about March 31, 2019, defendant MANUEL DOMINGOS PITA and others received and cashed more than $6,099,000 in checks from construction contractors made payable to Domingos 54 Construction for use to pay jobsite construction workers;

(c) On or about May 20, 2019, defendant MANUEL DOMINGOS PITA caused the filing with the IRS, on behalf of Domingos 54 Construction, of an IRS Employer's Quarterly Federal Tax Return ("Form 941") covering the period between on or about January 1, 2019 and on or about March 31, 2019, in which he reported that Domingos 54 Construction paid wages to employees of just $29,160.

(d) Between on or about October 1, 2020 and December 31, 2020, defendant MANUEL DOMINGOS PITA and others received and cashed more than

$10,569,000 in checks from construction contractors made payable to Domingos 54 for use to pay jobsite construction workers;

(e) On or about February 15, 2021, defendant MANUEL DOMINGOS PITA caused the filing with the IRS, on behalf of Domingos 54 Construction, of an IRS Employer's Quarterly Federal Tax Return ("Form 941") covering the period between on or about October 1, 2020 and on or about December 31, 2020, in which he reported that Domingos 54 Construction paid wages to employees of just $32,800.

(f) Between on or about October 1, 2021 and on or about December 31, 2021, defendant MANUEL DOMINGOS PITA and others received and cashed more than $16,648,000 in checks from construction contractors made payable to Domingos 54 for use to pay jobsite construction workers; and

(g) On or about February 21, 2022, defendant MANUEL DOMINGOS PITA caused the filing with the IRS, on behalf of Domingos 54 Construction, of an IRS Employer's Quarterly Federal Tax Return ("Form 941") covering the period between on or about October 1, 2021 and on or about December 31, 2021, in which he reported that Domingos 54 Construction paid wages to employees of just $43,350.

All in violation of 18 U.S.C. § 371.

## COUNT THREE
### (Willful Violation of OSH Act Causing Death to an Employee)

### A. Introduction

1. Domingos 54 Construction was a corporation registered with the Florida Department of State. Domingos 54 Construction was created in or about May 2018, and its principal place of business was at an address in Hillsborough County, in the Middle District of Florida. Defendant MANUEL DOMINGOS PITA was the only director of Domingos 54 Construction at its creation and was the company's President.

2. Defendant MANUEL DOMINGOS PITA managed and directed the operations of Domingos 54 Construction.

3. On occasion, Domingos 54 Construction, by and through defendant MANUEL DOMINGOS PITA, subcontracted for the wood framing of new construction homes, including roof trusses, wood sheeting, and indoor framing of homes.

4. The Occupational Safety and Health Act ("OSH Act") authorized the Occupational Safety and Health Administration ("OSHA") to promulgate workplace safety and health standards and required employers to comply with these standards. 29 U.S.C. §§ 654(a) and 655.

5. Pursuant to 29 U.S.C. § 655, OSHA promulgated a safety and health standard covering fall protection in residential construction activities. 29 CFR § 1925.501(b)(13). The standard required, in relevant part, that "[e]ach employee

10

engaged in residential construction activities 6 feet (1.8 m) or more above lower levels shall be protected by guardrail systems, safety net system, or personal fall arrest system." *Id.*

6. "Employer" was defined at 29 U.S.C. § 652(5). Defendant MANUEL DOMINGOS PITA was an "employer" under the OSH Act.

7. "Employee" was defined at 29 U.S.C. § 652(6). RRB was the defendant's "employee" under the OSH Act.

8. In 2019, the OSHA conducted several inspections at various Domingos 54 Construction's jobsites and issued six serious violations for failure to provide fall protection to employees. Defendant MANUEL DOMINGOS PITA participated in the informal settlement conferences for all six violations.

9. Defendant MANUEL DOMINGOS PITA continued to be aware that his employees routinely failed to use fall protection; he continued to fail to provide fall protection to his employees engaged in roof truss work; he did not train his employees to use fall protection; and he took no action to ensure that his employees used fall protection.

10. On March 5, 2020, defendant MANUEL DOMINGOS PITA assigned RRB and others to perform truss setting, roof sheeting, and interior framing at a residential construction site located at 10814 Applewood Range Way, Tampa, Florida.

11. On that day, RRB was working more than 6 feet above the ground and did not have fall protection.

**B. Charge**

On or about March 5, 2020, in the Middle District of Florida, and elsewhere, the defendant,

MANUEL DOMINGOS PITA,

willfully violated 29 U.S.C. § 1925.501 (*Duty to Have Fall Protection*), a standard promulgated pursuant to 29 U.S.C. § 655, requiring, among other things, that an employer must ensure that each employee engaged in residential construction activities 6 feet (1.8 m) or more above lower levels shall be protected by guardrail systems, safety net system, or personal fall arrest system, 29 CFR § 1925.501(b)(13); and said violation resulted in the death of defendant's employee RRB.

In violation of 29 U.S.C. § 666(e).

**FORFEITURES**

1. The allegations contained in Count One of this Superseding Information are incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

2. Upon conviction of a violation of 18 U.S.C. § 371, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violation.

3. The property to be forfeited includes, but is not limited to, the following:

a. An order of forfeiture in the amount of at least $5,568,499.74, which represents the approximate amount of proceeds defendant MANUEL DOMINGOS PITA personally obtained as a result of the offense alleged in Count One;

b. The real property located at **885 Saratoga Drive, Durham, North Carolina,** being the same premises conveyed to Maria Gabriela Pita, including all improvements thereon and appurtenances thereto, the legal description for which is as follows:

Lot 89, VILLAGES OF INDEPENDENCE PARK, a subdivision according to the plat or map thereof described in Plat Book 000196, at Page 000273, Deed Book 009359 at Deed Page 000345, of the Public Records of Durham County, North Carolina.

Parcel Identification Number: 0833-47-15-5799;

c. The real property located at **21250 Southeast 42nd Street, Morriston, Florida,** being the same premises conveyed to Daniel Pita Stable, LLC, including all improvements thereon and appurtenances thereto, the legal description for which is as follows:

Part of Tract 27, Starting Point S/D Replat of Tract 27, Lot 1, Book 1501, Page 264, of the Public Records of LEVY County, Florida.

Parcel Identification Number: 2222100000;

d. The real property located at **30073 Southwell Lane, Wesley Chapel, Florida,** being the same premises conveyed to Manuel D Pita, in Pasco County, including all improvements thereon and appurtenances thereto, the legal description for which is as follows:

Lot 13, WINDERMERE ESTATES AT WIREGRASS RANCH PHASE 1, according to the Plat thereof, recorded in Plat Book 72, Page 52, of the Public Records of PASCO County, Florida.

Parcel Identification Number: 28-26-20-0020-00000-0130;

e. The real property located at **26548 Castleview Way, Wesley Chapel, Florida,** being the same premises conveyed to Maria De Fatima Ferreira, including all improvements thereon and appurtenances thereto, the legal description for which is as follows:

Lot 2, BAY AT CYPRESS CREEK, a subdivision according to the plat or map thereof described in Plat Book 49, at Page 132, Block 21, of the Public Records of PASCO County, Florida.

Parcel Identification Number: 26-26-19-0010-02100-0020;

f. A 2020 Mercedes, Model GLC300W, Florida license plate number LVVE89, VIN number WDC0G8DB2LF726430;

g. A 2015 Honda, Model CRV, Florida license plate number NPXC38, VIN number 5J6RM4H94FL024700;

h. A 2022 Lexus NX - 4 Dr Wagon Sport Utility, Florida license plate number 04AYJY, VIN: JTJGKCEZ6N5000335.

i. Approximately $23,471.73 in funds seized from bank account 850061760 in the name of Manuel Pita/Domingos 54 Construction, Inc., at JPMorgan Chase Bank, Westerville, Ohio.

j. Approximately $429,804.40 in funds seized from the following Truist Bank Accounts:

   1. Bank Account 1000305263849 in the name of Manuel Pita/Domingos 54 Construction, Inc., at Truist Bank, Spring Hill, Florida.

   2. Bank Account 1100022081428 in the name of Manuel Pita/Domingos 54 Construction, Inc., at Truist Bank, Spring Hill, Florida.

   3. Bank Account 1100022078745 in the name of Maria Ferreria/Da Silva 54 Construction, Inc., at Truist Bank, Spring Hill, Florida.

k. Approximately $155,113 in cash seized from the residence of 26548 Castleview Way, Wesley Chapel, Florida.

    l.    Approximately 4120 in euros converted to $3,984.45 U.S. Currency seized from the residence of 26548 Castleview Way, Wesley Chapel, Florida.

    m.    Approximately $4,850 in cash seized from the residence of 30073 Southwell Lane, Wesley Chapel, Florida.

    n.    Approximately $340,006 in cash seized within a SentrySafe from the residence of 30073 Southwell Lane, Wesley Chapel, Florida.

5. If any of the property described above, as a result of any act or omission of the defendant:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

| | |
|---|---|
| TODD KIM<br>Assistant Attorney General<br>United States Department of Justice<br>Environment and Natural Resources Division | ROGER B. HANDBERG<br>United States Attorney |
| By: /s/ Banumathi Rangarajan<br>Banumathi Rangarajan<br>Senior Trial Attorney<br>Environmental Crimes Section | By: /s/ Jay L. Hoffer<br>Jay L. Hoffer<br>Assistant United States Attorney |
| | By: /s/ Rachelle DesVaux Bedke<br>Rachelle DesVaux Bedke<br>Assistant United States Attorney<br>Chief, Economic Crimes Section |