AF Approval __KL for JAM__                                  Chief Approval __~~KB~~__

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

UNITED STATES OF AMERICA

    v.                                           CASE NO. 8:22-cr-330-TPB-JSS

MANUEL DOMINGOS PITA

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Roger B. Handberg, United States Attorney for the Middle District of Florida, and the Assistant Attorney General of the United States Department of Justice's Environment and Natural Resources Division (collectively "the United States"), and the defendant, Manuel Domingos Pita, and the attorney for the defendant, David Macey, mutually agree as follows:

**A.**    **Particularized Terms**

    1.    Counts Pleading To

The defendant shall enter a plea of guilty to Counts One, Two, and Three of the Superseding Information. Count One charges the defendant with wire fraud conspiracy, in violation of 18 U.S.C. § 371. Count Two charges the defendant with conspiracy to defraud the United States, in violation of 18 U.S.C. § 371. Count Three charges the defendant with a willful violation of the Occupational Safety and Health Act causing death to an employee, in violation of 29 U.S.C. § 666(e).

Defendant's Initials __M.P.__

2.    Maximum Penalties

Counts One and Two each carry a maximum sentence of five years of imprisonment, a maximum fine of $250,000, a term of supervised release of not more than three years, and a special assessment of $100 per felony count for individuals, and $400 per felony count for persons other than individuals, such as corporations. Count Three carries a maximum sentence of six months of imprisonment, a maximum fine of $250,000 given that the misdemeanor resulted in death, no supervised release, and a special assessment of $10 per Class B misdemeanor count for individuals. With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense(s), and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense(s), or to the community, as set forth below.

3.    Elements of the Offenses

The defendant acknowledges understanding the nature and elements of the offenses with which defendant has been charged and to which defendant is pleading guilty. The elements of Counts One and Two are:

First:      That two or more persons in some way agreed to try to accomplish a shared and unlawful plan;

Second:     That the defendant knew the unlawful purpose of the plan and willfully joined in it;

Defendant's Initials _M.P._     2

| | |
|---|---|
| Third: | That during the conspiracy, one of the conspirators knowingly engaged in at least one overt act as described in the superseding information; and |
| Fourth: | That the overt act was committed at or about the time alleged and with the purpose of carrying out or accomplishing some object of the conspiracy. |

The elements of Count Three are:

| | |
|---|---|
| First: | The defendant was an "employer," meaning a person engaged in a business affecting commerce who has employees as defined by 29 U.S.C. § 652(5); |
| Second: | The defendant violated an OSH Act standard or regulation; |
| Third: | The defendant's violation was willful; and |
| Fourth: | The defendant's violation was the "cause in fact" and the "legal cause" of the employee's death. |

4.   **Indictment Waiver**

Defendant will waive the right to be charged by way of indictment before a federal grand jury.

5.   **Counts Dismissed**

At the time of sentencing, the underlying Indictment pending against defendant Manuel Domingos Pita in Case Number 8:22-cr-330-TPB-JSS, will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

6.   **No Further Charges**

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida and the Environmental Crimes Section of the United States Department of Justice's Environment and Natural Resources

Defendant's Initials _M.P._

3

Division, agree not to charge defendant with committing any other federal criminal offenses known to the United States at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

7.    Guidelines Sentence

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement.  The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

8.    Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will not oppose the defendant's request to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a).  The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Defendant's Initials _M.P._

4

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

9.     Role in Offense

The United States recommends to the Court that the defendant receive two-level upward adjustment, pursuant to USSG § 3B1.1, regarding the defendant's role in the offense. The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

10.    Low End

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will not oppose the defendant's request to the Court that the defendant receive a sentence at the low end of the applicable guideline range, as calculated by the Court.

5

Defendant's Initials _MR._

The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

11.    Mandatory Restitution to Victim of Offense of Conviction

Pursuant to 18 U.S.C. § 3663A(a) and (b), defendant agrees to make full restitution to the Internal Revenue Service and to Domingos 54 Construction, Inc.'s worker's compensation insurance providers. The defendant further agrees to pay the family of the deceased, RRB, an amount equal to the costs of necessary funeral and related services, as well as lost wages.

12.    Cooperation - Substantial Assistance to be Considered

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require. If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable

6

Defendant's Initials _MR._

guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both. If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b). In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

13.    Use of Information - Section 1B1.8

Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

14.    Cooperation - Responsibilities of Parties

a.    The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by

7

Defendant's Initials _M.P._

assuming the fundamental civic duty of reporting crime. However, the defendant understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

b. It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

(1) The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

(2) The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement. With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury,

8

Defendant's Initials _MP._

and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recision of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3)    The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)    The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5)    The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

9

Defendant's Initials _M.P._

15.   Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 28 U.S.C. § 2461(c), whether in the possession or control of the United States, the defendant, or defendant's nominees. The assets to be forfeited specifically include, but are not limited to, an order of forfeiture in the amount of at least $5,568,499.74, which represents the amount of proceeds the defendant admits he personally obtained as a result of the offense alleged in Count One to which the defendant is pleading guilty, as well as the following assets which the defendant admits were purchased or funded with proceeds of the offense charged in Count One.

a.   The real property located at **885 Saratoga Drive, Durham, North Carolina,** being the same premises conveyed to Maria Gabriela Pita.

b.   The real property located at **21250 Southeast 42nd Street, Morriston, Florida,** being the same premises conveyed to Daniel Pita Stable, LLC.

c.   The real property located at **30073 Southwell Lane, Wesley Chapel, Florida,** being the same premises conveyed to Manuel D. Pita.

d.   The real property located at **26548 Castleview Way, Wesley Chapel, Florida,** being the same premises conveyed to Maria De Fatima Ferreira.

e.   A 2020 Mercedes, Model GLC300W, Florida license plate number LVVE89, VIN: WDC0G8DB2LF726430.

Defendant's Initials _MP._   10

f.   A 2015 Honda, Model CRV, Florida license plate number NPXC38, VIN: 5J6RM4H94FL024700.

g.   A 2022 Lexus NX - 4 Dr Wagon Sport Utility, Florida license plate number 04AYJY, VIN: JTJGKCEZ6N5000335.

h.   Approximately $23,471.73 in funds seized from bank account 850061760 in the name of Manuel Pita/Domingos 54 Construction, Inc., at JPMorgan Chase Bank, Westerville, Ohio.

i.   Approximately $429,804.40 in funds seized from the following Truist Bank Accounts:

   1.   Bank Account 1000305263849 in the name of Manuel Pita/Domingos 54 Construction, Inc., at Truist Bank, Spring Hill, Florida.

   2.   Bank Account 1100022081428 in the name of Manuel Pita/Domingos 54 Construction, Inc., at Truist Bank, Spring Hill, Florida.

   3.   Bank Account 1100022078745 in the name of Maria Ferreria/Da Silva 54 Construction, Inc., at Truist Bank, Spring Hill, Florida.

j.   Approximately $155,113 in cash seized from the residence of 26548 Castleview Way, Wesley Chapel, Florida.

k.   Approximately 4120 in euros converted to $3,984.45 U.S. Currency seized from the residence of 26548 Castleview Way, Wesley Chapel, Florida.

l.   Approximately $4,850 in cash seized from the residence of 30073 Southwell Lane, Wesley Chapel, Florida.

m.   Approximately $340,006 in cash seized within a SentrySafe from the residence of 30073 Southwell Lane, Wesley Chapel, Florida.

The net proceeds from the forfeiture and sale of any specific assets will be credited to and reduce the amount the United States shall be entitled to forfeit as substitute assets pursuant to 21 U.S.C. § 853(p).

11

Defendant's Initials _MP_

The defendant acknowledges and agrees that (1) the defendant obtained $5,568,499.74 as a result of the commission of the offense charged in Count One and (2) as a result of the acts and omissions of the defendant, the proceeds not recovered by the United States through the forfeiture of the directly traceable assets listed herein, have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence. Therefore, the defendant agrees that, pursuant to 21 U.S.C. § 853(p), the United States is entitled to forfeit any other property of the defendant (substitute assets), up to the amount of proceeds the defendant obtained, as the result of the offenses of conviction and, further, the defendant consents to, and agrees not to oppose, any motion for substitute assets filed by the United States up to the amount of proceeds obtained from commission of the offenses and consents to the entry of the forfeiture order into the Treasury Offset Program.

The defendant additionally agrees that since the criminal proceeds have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence, the preliminary and final orders of forfeiture should authorize the United States Attorney's Office to conduct discovery (including depositions, interrogatories, requests for production of documents, and the issuance of subpoenas), pursuant to Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure, to help identify, locate, and forfeit substitute assets.

The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence and the United

12

Defendant's Initials __*M.P.*__

States shall not be limited to the forfeiture of the substitute assets, if any, specifically listed in this plea agreement.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture (including substitute assets) and to transfer custody of such property to the United States before the defendant's sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control, including all assets held by nominees, to execute any

Defendant's Initials _AR._

13

documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years.  The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct.  The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing.  In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may

14

Defendant's Initials _M.R._

impose upon the defendant in addition to forfeiture.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including the forfeiture of any substitute assets, is final.

**B.    Standard Terms and Conditions**

1.    Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to

15

Defendant's Initials _M.Y._

the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013.

The defendant understands that this agreement imposes no limitation as to fine.

2.    Supervised Release

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.    Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4.    Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant

16

Defendant's Initials _M.F._

or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5.   Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States to obtain current credit reports in

17

Defendant's Initials _MP-_

order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6.      Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7.      Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court

18

Defendant's Initials _M.F._

erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.     **Middle District of Florida and DOJ-ECS Agreement**

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and the Environmental Crimes Section of the United States Department of Justice's Environment and Natural Resources Division, and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9.     **Filing of Agreement**

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

Defendant's Initials _M.P._          19

10.    Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be

Defendant's Initials _____

20

adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.    Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

STIPULATED FACTS

Under Florida law, any contractor or subcontractor who engages in any public or private construction is required to secure and maintain coverage valid under state law for worker's compensation insurance. Providers of worker's compensation insurance base the premiums they charge and the amount of coverage they provide on the number of employees a company has and the total annual payroll of those employees. Once the insured company gets its coverage, it can provide proof of the coverage of its employees with worker's compensation insurance in the form of a Certificate of Liability Insurance, a document declaring that the subcontractor has the requisite insurance coverage. This Certificate of Liability Insurance ("COI"), however, does not include on its face the number of workers that the policy covers or the amount of payroll that the insurance policy covers.

Defendant's Initials _M.P._

21

In the construction industry, there are companies that operate essentially as "shell" construction companies. Such a shell company enters into contracts with contractors operating construction jobsites to provide workers at their jobsites who purport to be the employees of the shell company. The shell company receives "payroll checks" from the contractors at the end of each week of work or project. These checks are made payable to the shell company. The operators of the shell company cash those checks in order to get the cash, which they then distribute to pay the workers' wages. In this way, the contractors do not appear to be the ones employing these workers and the contractors can avoid payment of payroll, employment, and other taxes. The shell construction company also evades payment of any of those taxes. The shell construction company operators do, however, collect fees from the employing contractors for the "use" of their shell company employees at worksites.

To carry out this scheme, the operators of these fraudulent shell construction companies cause the sending of wire transmissions in interstate commerce containing COIs from their insurance companies to numerous contractors. These COIs falsely reflect that the shell construction company's employees had the requisite amount of worker's compensation insurance coverage. In actual fact, however, the total number of the shell construction company's employees and their employees' payroll far exceeds the number of employees and the total payroll that the shell construction company's insurance carrier(s) knew about from the shell construction company's insurance applications. These wire transmissions of

22

Defendant's Initials _M.B._

insurance applications from the shell companies seeking to obtain insurance and the wire transmissions of the COIs to contractors to verify insurance coverage were all thus materially false and fraudulent statements made in interstate commerce. Those false statements had the effect of reducing substantially the amounts of the insurance premiums that a shell construction company would have to pay for insurance coverage, as the number of workers in those applications was substantially lower than the number of workers that the shell construction company's insurance policy would be covering.

Manuel Domingos Pita was involved in a conspiracy to create and operate several shell construction companies. One was the shell construction company Domingos 54 Construction, Inc. ("Domingos 54"). Manuel Domingos Pita formed the company in May 2018. Starting in May 2018, Manuel Domingos Pita reported that the business had very few paid employees. Yet from 2018 through March 2022, Manuel Domingos Pita and/or co-conspirators deposited a large amount of money in checks from construction contractors and withdrew most of that money in cash from the various bank accounts of Domingos 54.

Manuel Domingos Pita used that cash to pay workers at construction jobsites. During the same time period, Domingos 54 paid only about $92,000 in employment taxes, with the result that Domingos 54 paid employment taxes for just the workers it reported to its payroll company as its own, and neither Domingos 54 nor the contractors who wrote that high volume of wage checks payable to Domingos 54 paid any employment taxes for the jobsite workers who received the bulk of that

23

Defendant's Initials _MP_

money in wages. In addition, the defendant and Domingos 54 failed to pay the required worker's compensation insurance premiums necessary to cover that large number of jobsite workers and paid only the much smaller premiums due based on the low payroll numbers they reported in applications to their insurance companies.

On May 16, 2018, Manuel Domingos Pita obtained a worker's compensation insurance policy for Domingos 54, reporting a payroll of only $108,200 in his company's application. During the policy period, Domingos 54 received over $15 million in contractor checks. On May 1, 2019, Domingos 54 obtained a new policy, reporting in its application a total payroll of only $120,000. During this policy period, Domingos 54 received over $30 million in contractor checks. On May 4, 2020, Domingos 54 obtained yet another new insurance policy, which Manuel Domingos Pita reported covered Domingos 54's 15 employees who earned a total payroll of $238,192. Domingos 54 received approximately $40 million in contractor checks during this policy period. On April 30, 2021, Manuel Domingos Pita submitted another application for insurance coverage for the period from May 2021 through May 2022. His responses were consistent with those he had made in Domingos 54's application forms for the preceding years. He declared that the company had 8 employees with an estimate annual payroll of $160,000. During this same time period, Domingos 54 received over $54 million in contractor checks that went to pay jobsite workers.

Domingos 54 and the defendant profited from this scheme by retaining as fees a percentage of the workers' payroll checks that they received from the contractors

Defendant's Initials  _M.P._

24

and subcontractors with whom they did business. The defendant used large portions of the proceeds he thus obtained from this scheme to purchase or finance the purchase of the real and personal properties listed in the "Forfeitures" section of the Superseding Information and the "Forfeiture of Assets" section of this plea agreement.

The defendant and other co-conspirators committed numerous overt acts in furtherance of the wire fraud and tax fraud conspiracies. For example, in a May 1, 2019 wire, Domingos 54's local insurance broker returned to Manuel Domingos Pita's email address the final signed version of the "Domingos 54 Work Comp Apps". That document was the application form and supporting document that Manuel Domingos Pita had signed for coverage for Domingos 54 for the period from May 2, 2019 through May 2, 2020. The insurance application paperwork that Manuel Domingos Pita had signed indicated that the "estimated annual remuneration" of Domingos 54's covered employees was $120,000 for that year.

During that same calendar year, in the period between January 1 and March 31, 2019, defendant Manuel Domingos Pita and other conspirators received and cashed over $6,099,000 in checks from contractors that were made payable to Domingos 54 Construction and were for use in paying the wages of workers who purportedly worked for Domingos 54 at jobsites. On or about May 20, 2019, defendant Manuel Domingos Pita caused the filing with the IRS of an Employer's Quarterly Federal Tax Return ("Form 941") covering that same time period which reported that Domingos 54 Construction had employee wages of just $29,160.

25

Defendant's Initials _M.P._

This pattern of conduct repeated in every quarter following March 2019. For example, during the period between October 1 and December 31, 2020, defendant Manuel Domingos Pita and other conspirators received and cashed over $10,569,000 in checks from contractors that were made payable to Domingos 54 Construction and were for use in paying the wages of workers who purportedly worked for Domingos 54 Construction at jobsites. On or about February 15, 2021, defendant Manuel Domingos Pita caused the filling with the IRS of an Employer's Quarterly Federal Tax Return ("Form 941") covering that same time period which reported that Domingos 54 Construction had employee wages of just $32,800.

During the period between October 1 and December 31, 2021, defendant Manuel Domingos Pita and other conspirators received and cashed over $16,648,000 in checks from contractors that were made payable to Domingos 54 Construction and were for use in paying the wages of workers who purportedly worked for Domingos 54 Construction at jobsites. On or about February 21, 2022, defendant Manuel Domingos Pita caused the filling with the IRS of an Employer's Quarterly Federal Tax Return ("Form 941") covering that same time period which reported that Domingos 54 Construction had employee wages of just $43,350.

The United States estimates that the loss to the insurance providers for Domingos 54 due to the defendant's conduct was approximately $20,487,332. The United States also estimates that the loss to the IRS for the failure of Domingos 54 or anyone else to pay employment taxes on behalf of Domingos 54 "employees" was

Defendant's Initials _M.P._

26

approximately $35,128,348. Those figure represent the estimated losses for the period between March 2008 and March 2022.

With respect to Count Three, on occasion, including March 5, 2020, Manuel Domingos Pita and Domingos 54 subcontracted to provide wood framing for new construction residential homes.  On March 5, 2020, Manuel Domingos Pita assigned RRB and others to perform truss setting, roof sheeting, and interior framing at a residential construction site located at 10814 Applewood Range Way, Tampa, Florida. As such, on March 5, 2020, Manual Domingos Pita, as the President and registered agent of Domingos 54, was engaged in a business affecting commerce and had employees, and therefore he was an "employer" within the meaning of 29 U.S.C. § 652.

Applicable standards provide that an employer must ensure that each employee engaged in residential construction activities 6 feet (1.8 m) or more above lower levels shall be protected by guardrail systems, safety net system, or personal fall arrest system; that is, the employer must provide and ensure that employees have fall protection.  29 CFR § 1925.501.

Prior to the March 5, 2020, fatality, the Occupational Safety and Health Administration conducted several inspections at various Domingos 54's jobsites on multiple occasions and issued six serious violations for failure to provide fall protection to employees:

Defendant's Initials _MP._                    27

| INSPECTION # | INSPECTION DATE | Nature of Violations |
|---|---|---|
| 1378608 | 02/14/2019 | Willful/Serious - failure to provide fall protection and others |
| 1382226 | 02/28/2019 | Serious - failure to provide fall protection |
| 1385609 | 03/7/2019 | Serious - failure to provide fall protection |
| 1388590 | 03/27/2019 | Willful/Serious - failure to provide fall protection and others |
| 1412996 | 07/03/2019 | Serious - failure to provide fall protection |
| 1416242 | 07/15/2019 | Willful/Serious - failure to provide fall protection and others |

Manuel Domingos Pita participated in the informal settlement conferences for all six violations. As such, he knew of his legal obligation to provide and ensure that employees used fall protection. Manuel Domingos Pita further knew that not having fall protection exposed employees to injuries, up to and including death, from falls from heights 6 feet or more above lower levels in residential construction activities. Nevertheless, and notwithstanding any written policies otherwise, Manuel Domingos Pita was aware that his employees routinely failed to use fall protection; he continued to fail to provide fall protection to his employees engaged in roof truss work; he did not train his employees to use fall protection; and he took no action to ensure that his employees used fall protection.

The victim, RRB, worked as a framer for Domingo's 54 and Manuel Domingos Pita at a construction site in Tampa, Florida. On March 5, 2020, the

Defendant's Initials _M.P._                    28

victim and three other carpenters were installing sheeting on the roof of a residential home, approximately 10 feet above the ground. None of the employees, including the victim, were using fall protection gear. Conditions were windy, with sustained winds above 10 miles per hour, and gusts of 30 miles per hour.  Around 2:40 p.m., the wind caught a plywood sheet being held by the victim, blowing him off the roof. The victim fell head-first to the ground and died shortly thereafter.  The lack of fall protection was the cause in fact and the legal cause of the victim/employee's death.

Manuel Domingos Pita, through Domingos 54, filed a death claim for the victim under the company's workers compensation policy with Insurance Company #1.  The application reported a loss date of March 5, 2020, and the insurance company made a payment on the claim.

The actions taken by Manuel Domingos Pita, as described above, were taken willfully, knowingly, and with the specific intent to violate the law.  Manuel Domingos Pita did not take those actions by accident, mistake, or with the belief that they did not violate the law.

12.    Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

Defendant's Initials _MP._                     29

13.    Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this ___31st___ day of ___May___ 2024.

ROGER B. HANDBERG
United States Attorney

_____
Manuel Domingos Pita
Defendant

_____
Jay L. Hoffer
Assistant United States Attorney

_____
David Macey, Esq.
Attorney for Defendant

_____
Rachelle DesVaux Bedke
Assistant United States Attorney
Chief, Economic Crimes Section

By: Todd Kim
Assistant Attorney General
Environment and Natural Resources
Division

_____
Banumathi Rangarajan
Senior Trial Attorney
Environmental Crimes Section

30